## BOZANT et al. v. FEDERAL UNDERWRITERS EXCHANGE.

### No. 11351.

Court of Civil Appeals of Texas. Galveston.

Feb. 26, 1942.

Allen, Helm & Jacobs, of Houston, for appellants.

Battaile & Burr, of Houston, for appellee.

MONTEITH, Chief Justice.

This is an appeal in a workman's compensation case brought by A. E. Bozant, as father and next friend of his minor son, Burleigh A. Bozant, to set aside an award of the Industrial Accident Board in favor of appellee, Federal Underwriters exchange, and to recover compensation for total and permanent incapacity alleged to have been the result of an injury sustained by Burleigh Bozant in the City of Houston on October 24, 1939, in the course of his employment as a mechanic's helper with T. S. C. Motor Freight Lines, Inc., who carried compensation insurance with appellee.

Appellee answered by general demurrer, exceptions and a general denial.

The case was tried before a jury. At the conclusion of appellant's evidence, on motion of appellee, the court withdrew the case from the jury and entered a judgment in favor of appellee.

The appellant, Burleigh Bozant, who was 18 years of age at the time he was injured, had been employed, after school hours, as a mechanic's helper in the repair shop of the T. S. C. Motor Freight Lines in Houston, Texas. He was paid for his services by the hour and was employed only when there was work for him to do. While school was in session and there was work for him to do, it was customary for him to go to the shop between 3:30 and 4 o'clock in the afternoon and to work until 11 o'clock at night. On the day on which he was injured, he checked in at the shop at about 3:30 in the afternoon. He finished his work at about 10 minutes to 11 o'clock that night and was told by the superintendent of the repair shop to "clean up and check off and go home." He proceeded to clean up and change to his street clothes and checked out at the checking desk at 11 o'clock. He started to the bus line to take a bus home when, at the suggestion of the superintendent of the repair shop, he decided to ride in one of the company's trucks as far as Woolworth Street on which he lived. He received severe injuries and burns as the result of a collision between the Company's truck in which he was riding and an automobile, which occurred after he left his place of employment and before he reached Woolworth Street on which he lived.

In defining the term "employee", Section 1, Article 8309, R.C.S.1925, Vernon's Ann. Civ. Statutes Article 8309, § 1, a portion of what is commonly known as "The Workmen's Compensation Act", uses the following language: "'Employee' shall mean every person in the service of another under any contract of hire, expressed or implied, oral or written, * * * except one whose employment is not in the usual course of the trade, business, profession or occupation of his employer."

By amendment, which became effective May 5, 1937, the following provision was added to said section: "Provided that an employee who is employed in the usual course of the trade, business, profession or occupation of an employer and who is temporarily directed or instructed by his employer to perform service outside of the usual course of trade, business, profession or occupation of his employer is also an employee while performing such services pursuant to such instructions or directions. * * *"

While the Workmen's Compensation Law was enacted for the purpose of protecting employees from risks or hazards imposed upon them in the performance of the employer's work or business, it has been firmly established that compensation is not allowable for injuries to employees while going to or from the place of their employment except in cases where the employee has been instructed to perform services for his employer outside of his usual course of business. This rule is based on the premise that one injured upon the streets or highways while going to or from his work suffers his injury as a consequence of risks and hazards of the streets and highways to which all members of the public are alike subject, and not as a consequence of risks and hazards having to do with and originating in the work or business of the employer.

The Supreme Court has laid down the rule that "* * * in order that an injury resulting from the risks of the streets may be compensable, the employee, at the time of the injury, must be actually

engaged in the performance of some particular duty of his employment, or must be upon some substantial mission of his employer in the course of his employment, which subjects him to such perils." Smith v. Texas Employers' Ins. Ass'n, 129 Tex. 573, 105 S.W.2d 192, 193, 194.

In the case of Carpenter v. Hartford Accident & Indemnity Co., Tex.Civ.App., 133 S.W.2d 181, 182, it was alleged that the deceased had been instructed to go to the funeral of his employer's father to which he was furnished transportation by automobile. While en route to the funeral, during regular business hours, he sustained injuries from which he died. In affirming the judgment of the trial court, the appellate court held that: "The allegations touching the employment, the services to be rendered and the business of the employer, make it self evident that the employee was not engaged in any character of work for his employer, contemplated by the provisions of the Workmen's Compensation Law. * * *"

While the Carpenter case was decided prior to the amendment of Section 1 of said Article 8309, it was held in that case that even the amendment, as evidenced by the emergency clause, contemplates that the employee be engaged in "work or acts unusual to their regular employment, but within the general scope and in furtherance, or in the interest * * * of the employer", and that "attending the funeral of the employer's father, however laudable and commendable, cannot be said to bring the employee within the scope of the Workmen's Compensation Laws."

In the case of Travelers' Ins. Co. v. Santos, Tex.Civ.App., 55 S.W.2d 868, the claimant had obtained permission from the foreman of the company by whom he was employed to ride to Eagle Pass in a truck belonging to his employers. He was injured while returning to work in the truck. Recovery was denied on the ground that claimant was not injured while engaged within the general scope of his employment.

In the case of London Guaranty & Accident Co. v. Smith, Tex.Civ.App., 290 S. W. 774, a claimant, a salesgirl and assistant buyer, had been instructed by her employer to hurry home to supper and to then return and inspect samples of merchandise. She was injured while crossing the street on her way to supper. The court held that the injury had not been received in the course of her employment since her act was not one in furtherance of her employer's business.

In the case of American Indemnity Co. v. Dinkins, Tex.Civ.App., 211 S.W. 949, 952, the deceased, after leaving his employer's premises for the day, was struck by an automobile while riding his motorcycle on a public highway. The court in holding that the injury was not received in the course of his employment used the following language: "Was the injury sustained by Dinkins one which originated in the work of his employer, and was it also sustained while he was engaged in or about the furtherance of the affairs of his employer? If so, then what business of his employer was he performing? If one is proceeding to his home for needed rest and refreshment, can he be regarded as engaged in the furtherance of the affairs or business of his employer? If so, then by parity of reasoning the act should be construed to cover injuries received by an employé while he is on his vacation. It is plain that Dinkins sustained his injury after he had abandoned his duties which involved the furtherance of the affairs of his employer."

In the instant case, Burleigh Bozant was injured upon a public highway while returning to his home from his place of employment after his employment had ceased. He was not required to expose himself to the risks and hazards of the streets and highways in the work in which he was engaged, and his acceptance of an offer of a ride to his home in one of the Company's trucks from the superintendent of the repair shop by whom he was employed cannot be construed as an instruction to perform a mission of his employer outside of the scope of his employer's business.

Appellants complain of the action of the trial court in excluding testimony in reference to certain declarations which were claimed to have been made to appellant's father and mother at the scene of the accident by E. H. Huggs, the superintendent of the repair shop of T. S. C. Motor Freight Lines, to the effect that he, Huggs, was sorry that he had directed Burleigh to get on the truck; that Burleigh would not have been on the truck if he, Huggs, had not put him there, and that Burleigh was the truck driver's helper. The testimony was excluded on appellee's objections that the statements in question were self serving and hearsay and not binding on appellee,

and that there was no testimony in the record showing the authority of Mr. Huggs to bind appellee or the T. S. C. Motor Freight Lines or that the statements claimed to have been made by Mr. Huggs were within the scope of his employment with T. S. C. Motor Freight Lines.

■■ It is well established that before hearsay statements or declarations of an agent or servant may be received in evidence so as to bind his employer or master, it must be first shown that the agent or servant was speaking as such agent or servant; that he was, at the time, acting in the scope of his authority; that such statements related to the matter or thing for which such agent or servant was employed, and that in his capacity he was authorized to speak on the matter at issue by and for his employer. Southern Surety Co. v. Nalle & Co., Tex.Com.App., 242 S. W. 197. Outside of the fact that Mr. Huggs was shown to have been an employee of T. S. C. Motor Freight Lines, none of the above requisites as to the reception of the evidence in question were shown to exist and no proper predicate was laid for their introduction. Under above facts, appellants' contentions cannot be sustained.

It follows from above conclusions that the judgment of the trial court must be in all things affirmed.

Affirmed.