## JASPER v. TEXAS EMPLOYERS INS. ASS'N.

### No. 2736.

Court of Civil Appeals of Texas. Waco.

Nov. 24, 1947.

Curtis E. Hill, of Dallas, for appellant.

Burford, Ryburn, Hincks & Ford, of Dallas, for appellee.

TIREY, Justice.

This is a workman's compensation case (non-jury). The plaintiff brought this suit as the sole surviving beneficiary of T. A. Jasper under the terms of the Workmen's Compensation Law of Texas, Vernon's Ann.Civ.St. art. 8306 et seq., against the insurance carrier, alleging in substance that her husband was killed while he was an employee of James Stewart & Co., Inc., and while he was engaged in his master's business. The case was tried on an agreed statement of facts which stipulated in part: "The sole and only question involved is whether Jasper was killed in the course of his employment." The court rendered judgment that plaintiff take nothing against the insurance carrier and that it go hence without day and recover its costs, and the plaintiff has appealed.

Under the stipulated facts the only question presented by this appeal is whether Jasper as a matter of law was within the scope of his employment at the time of the accident causing his death. The point requires a comprehensive statement.

T. A. Jasper suffered injuries which resulted in his instant death on January 12, 1944, at 6:55 A. M., when an automobile traveling north on Fish Creek Road struck him as he was on his way to work and while walking across the third traffic lane of a four-lane public highway at a point opposite and about 40 feet from the west entrance gate of the grounds at North American Aviation, Inc., near Grand Prairie, Texas. The Fish Creek Road was a connecting link between Dallas and Tarrant counties and was used generally by the

residents in that area. The operator of the car which struck Jasper was not employed by North American, or by any of its subcontractors, and he was using the highway at the time as a member of the traveling public. Jasper was employed by James Stewart & Co., Inc., as its storekeeper at its storehouse located on the plant site of the North American Aviation plant. James Stewart & Company was an independent contractor and at the time was engaged in doing certain work for the North American Aviation Company. The entire plant site was enclosed by an insurmountable metal fence, with entrance gates presided over by uniformed guards in the employ of North American. Stewart's warehouse, where Jasper worked, was located on the plant site within the fenced enclosure some 528 feet from the west gate, off Fish Creek Road, and was reached over a private roadway within the plant enclosure. The Fish Creek Road, adjacent to the plant site, consisted of a 100 foot right-of-way, a concrete slab 44 feet in width divided into four traffic lanes of 11 feet each, with a six foot black top on either side of the highway. The employees of Stewart were required to be on the job at 8:00 A. M. Jasper usually arrived early in order to check out the tools to the several hundred workers employed by Stewart. On the west side of Fish Creek Road, directly opposite and facing the entrance gate, was a privately owned and operated cafe. Adjoining the cafe was about 100 square feet of open ground where a number of the Stewart employees parked their cars and got an early morning cup of coffee before riding across Fish Creek Road, through the entrance gate and into the parking area on the grounds provided by Stewart for his employees. The entrance gate off Fish Creek Road was about twelve feet wide and used for the ingress and egress of the employees of Stewart & Company and persons who had dealings directly with Stewart within the plant site enclosure, which entrance gate, while not the only one in such plant site enclosure through which such employees and other persons were permitted to pass, was the most convenient and practical one. On the morning of the accident Jasper left home about 6:30 (in a car) in company with W. A. Raliff and J. H. Wall, the owner of the automobile. Wall stopped his car in the vacant space adjoining the cafe, intending to drink coffee and then drive the car across the public highway, through the entrance gate into the parking area within the enclosure which was fenced. All three started into the cafe, but Jasper decided he didn't have time to stay for coffee, left the cafe and started walking across the highway approaching the west entrance gate to the plant site. When he arrived at a point in the third traffic lane, which was approximately forty feet from the entrance gate, and about opposite a small guard house which served as office and protected the guards from inclement weather, Jasper was struck by the left fender of a north bound speeding automobile. He was hurled through the air some thirty-five to forty-five feet and his body came to rest about four feet inside of the outside concrete slab, and death was instantaneous. It was further stipulated that "all of Jasper's services were performed in the storehouse within the plant's enclosure; he had no duties away from the storehouse itself."

■■ Much has been written on compensation claims falling within the doctrine of what has been designated the "Going and Coming Rule" as applied to workmen's compensation law. That rule is: "As a general rule, an employee cannot recover under the compensation law for injuries sustained while going to or coming from his place of employment. The fact that he must use the streets for coming to and returning from work does not make the risks there encountered incident to his employment." 45 T.J. 523. In the application of the law to the agreed factual situation here it is our duty "to give to the terms of the act the utmost liberality of which they are legally capable, to the end that the beneficent purposes of the act may be effectuated." And "we must remember that the purpose of the Workmen's Compensation Law, as set out in the preamble of the act, was to make more certain the recovery of compensation for injuries to employes in cases where an action would ordinarily exist at common law, to the exclusion, among other things, of the doctrine

of assumed risk." And "since the common-law rules of liability have been abrogated in cases of this nature, there is all the greater reason that the court should endeavor to follow the spirit of the statute." American Indemnity Co. v. Dinkins, Tex. Civ.App., 211 S.W. 949, 951, writ ref.

█ Did the trial court err in concluding as a matter of law that Jasper was not in the course of his employment at the time he was killed? We think not. First of all, Jasper's services were performed in the storehouse within the fenced enclosure and he had no duties away from the storehouse itself. Second, Jasper's employer had no control over the public highway where he was killed, nor can it be said that Jasper's injuries arose in or about the furtherance of the affairs or business of his employer. Jasper was acting solely on his own in returning back to work, and he met his death on a public highway where he was subject to all of the hazards of the traveling public.

█ Our Texas courts have followed the rule announced by the Supreme Court of Massachusetts in the McNicols case, In re McNicol, 215 Mass. 497, 102 N.E. 697, L.R.A.1916A, 306. The rule there announced is: " 'In order that there may be recovery, the injury must both arise out of and also be received in the course of employment. Neither alone is enough. * * * It is sufficient to say that an injury is received "in the course of" the employment when it comes while the workman is doing the duty which he is employed to perform. . It arises "out of" the employment when there is apparent to the rational mind * * * a causal connection between the conditions under which the work is required to be performed and the resulting injury. * * * But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workman would have been equally exposed apart from the employment. The causative danger must be peculiar to the work, and not common to the neighborhood. It must be incidental to the character of the business, and not independent of the relation of master and servant. It

need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence.' " See American Indemnity Co. v. Dinkins, supra, 211 S.W. 953.

Our Beaumont Court of Civil Appeals in the Dinkins case, supra, applied the above rule and held in effect that since the record was without dispute that Dinkins had ended his work at the plant where he was employed and was on a public street proceeding to his home for rest, that the injuries he received resulting in his death were not compensable. Our Supreme Court in Lumberman's Reciprocal Association v. Behnken, 112 Tex. 103, 246 S.W. 72, point page 75, 28 A.L.R. 1402, in reviewing the Dinkins case and distinguishing it from the rule it applied in the Behnken case, said: "Dinkins' right to use the street was not derived from his employment. The injury occurred at a place provided by the city for public use, and not at a place furnished by Dinkins' employer, as a special mode of access to his work. The danger to Dinkins was one to which each member of the public was alike exposed. He was himself as much exposed to the danger when traversing the street on purely private business as when hurt. Dinkins' injury did not result from risk or hazard incident to the conduct of his employer's business. His injury did not arise out of the business." We think that such is the exact situation with reference to Jasper. Jasper's employer had no control of the public highway where he was killed. Jasper's services to his employer were performed in the storehouse within the plant's enclosure and Jasper had no duties away from the storehouse itself. He was acting soley on his own in returning back to work and his injuries and death did not result from risk or hazard incident to the conduct of his employer's business, nor did it arise out of the business. Our Supreme Court has never departed from the reasons it pointed out for approving the judgment in the Dinkins' case. Substantially the same question arose in Texas Employers' Ins. Ass'n v. Smith, 75 S.W.2d 732, and the Dallas Court of Civil Appeals followed the

Dinkins case, supra, and the opinion by the Waco Court of Civil Appeals in London Guaranty & Accident Co. v. Smith, 290 S.W. 774, writ ref., and held that Smith was killed on a public highway, while on his way back to work from his evening meal, and that the claim was not compensable and in a majority opinion reversed and rendered the case. Mr. Justice Looney wrote an exhaustive dissenting opinion in which he set out clearly and forcibly his views as to why the claim was compensable. Our Supreme Court granted writ of error in that case and in disposing of it (129 Tex. 573, 105 S.W.2d 192, 194, opinion adopted by Supreme Court) said in part: "It appears to be the settled rule that even though the contract of employment contemplates that the employee, while engaged generally in the performance of his duties, may be subjected to the perils and hazards of the streets and highways, *nevertheless in order that an injury resulting from the risks of the streets may be compensable, the employee, at the time of the injury, must be actually engaged in the performance of some particular duty of his employment, or must be upon some substantial mission of his employer in the course of his employment, which subjects him to such perils.* * * * We are unable to see how it can be said that the deceased employee in this instance occupied a position in any sense different from the ordinary employee who is injured while returning from his meals, in his own conveyance, to the place of his employment. The fact that he may still have been within the hours of his employment, or the fact that he was subject to call while at his home, is not controlling. These conditions may have been sufficient to bring the accident within the 'course of the employment,' but they could not in any manner change the situation with reference to the risks which were directly responsible for the injury. As above stated, *it was undisputedly shown that if the deceased was on his way to the office for any purpose connected with his employment, such service was to be performed upon the premises, and not upon the streets.* This circumstance brings the case in principal squarely under the decision in the Aetna Life Ins. Co. v. Palmer, supra (Tex.Civ.App., 286 S.W. 283, writ ref.), where it was held that the injury in question did not come within the compensation law." (Italics ours.) We think that such was the exact situation in Jasper's case. The Dallas Court of Civil Appeals again had substantially the same question before it in Banks v. Commercial Standard Ins. Co., 78 S.W.2d 660, and again the majority of the court held that the claim was not compensable because Banks received his injury while running across a public highway to a cafe for the purpose of eating his lunch, the majority opinion having been based on the Dinkins case, supra, and the opinion of this court in the Smith case, supra, and again Mr. Justice Looney entered a dissent and cited his dissenting opinion in Texas Employers' Ins. Ass'n v. Smith, supra, and the Supreme Court dismissed the application for writ of error. The Dallas Court of Civil Appeals again had this exact point under consideration in Texas Employers Ins. Ass'n v. Grammar, 157 S.W.2d 701, and in a majority opinion decided this question adversely to the position of appellant and again Mr. Justice Looney filed a comprehensive dissenting opinion, but the Supreme Court refused the application for writ of error for want of merit. Appellant in a carefully prepared brief attempts to bring the stipulation within an exception to the "Going and Coming Rule" herein stated, but it is clear to us that under the decisions which we have cited and which are controlling, this claim does not come within any of the exceptions to that rule, and that further discussion would serve no useful purpose. Our view is that the Jasper claim as a matter of law is not compensable, and the judgment of the trial court in so holding must be affirmed.

Accordingly, the judgment of the trial court is affirmed.