**EMPLOYERS MUT. LIABILITY INS. CO. OF WISCONSIN v. KONVICKA et al.**

No. 13819.

United States Court of Appeals
Fifth Circuit.

June 27, 1952.

Newton Gresham, Houston, Tex., for appellant.

Adolph D. Pavlicek, C. H. Chernosky, Houston, Tex., for appellees.

Before HOLMES, STRUM and RIVES, Circuit Judges.

RIVES, Circuit Judge.

The appellant brought this action in the District Court to set aside an award of the Industrial Accident Board of the State of Texas in favor of the legal beneficiaries of John Konvicka, deceased, an employee of the A. O. Smith Corporation, based on his accidental injury and death in Harris County, Texas, on November 18, 1948. The defendants, beneficiaries, filed a cross action. In accordance with the Texas Workmen's Compensation Act there was a trial *de novo* and the court sitting without a jury held against the insurer (appellant here) on its action and in favor of the beneficiaries (appellees here) on their cross action.

The appellees are in agreement with the following statement of the facts contained in the appellant's brief:

"The Trial Court found:

" 'The Corporation (employer) owns and operates a large manufacturing plant, about 12 miles from the city limits of the City of Houston, where it employs many workers who live in Houston, as did Konvicka. The corporation did not provide housing facilities near its plant for the use of the employees, nor did it pay additional compensation for, or furnish, transportation between Houston and the plant to such employees. There was no convenient means of public transportation available to the plant and, as a result, many employees of the Corporation rode to and from their work in their own cars. Other employees rode in cars belonging to their fellow employees, on a share-a-ride basis. This custom was well known to the Corporation, which provided an open parking space for the use of its employees in parking their cars. The parking space so furnished did not have a smooth surface, but, on the contrary, it had many holes and ruts in it. Konvicka rode to and from his work with a fellow employee who parked his automobile on the lot provided for such purpose by the Corporation.

" 'A heavy rain had fallen on November 18, 1948, and as a result the automobile in which Konvicka rode to and from his work was drowned out. This employee, together with Konvicka and another fellow worker, attempted to start the stalled auto-

mobile by pushing, after cranking had failed to start it.'

"Departing now from the Trial Court's statement of its fact findings, and reverting directly to the testimony of appellees' witnesses:

"The attempt to start the car by pushing it by hand was unsuccessful, and, while the car was still on the Corporation's parking lot, another employee (Mr. Kent) began to push it with his automobile. At this time there was some difficulty in levelling the bumpers, because of the 'roughness of' and the 'holes in the parking lot'. Konvicka stood on the left side of the front bumper of the pushing car, and Mr. Swearingen, another employee, stood on the right side. The pushing car then pushed the stalled car out of the parking lot and off of the Corporation's premises, onto Industrial Road, a fourlane concrete public highway. The stalled car was pushed across the highway and turned to its left into one of the far lanes, headed toward Houston, and the pushing car backed off and re-aligned itself behind the stalled car, also headed toward Houston. At this point Swearingen got off the bumper, as the bumpers were lined up after the cars got on the concrete highway, and he saw no necessity for standing on them. The stalled car was a 1937 Plymouth and the pushing car was a 1939 Ford. When Swearingen got off the bumpers on the main concrete highway, Konvicka either remained on or got off and got back on. In any event, Konvicka rode the bumpers from that point on as the stalled car was pushed on Industrial Road toward Houston in an effort to start it, and when it did start and separated from the pushing car, he fell to the pavement and sustained fatal injuries.

"All of the above events occurred after the employees involved had finished work for the day and punched out at their time clock. They * * were headed toward home on the public highway when the accident occurred."

The contention of the appellant is that Konvicka was not in the course of his employment at the time of the accident and, therefore, his death was not compensable.

The Texas Workmen's Compensation Act provides:

"The term 'injury sustained in the course of employment,' as used in this law, * * * shall include all * * injuries of every kind and character having to do with and originating in the work, business, trade or profession of the employer received by an employé while engaged in or about the furtherance of the affairs or business of his employer whether upon the employer's premises or elsewhere." Article 8309, Sec. 5, R.C.S., Vernon's Ann.Civ.St. art. 8309.

To be compensable Konvicka's fatal injury must (1) have originated in the work, and (2) have occurred at a time when Konvicka was engaged in or about the furtherance of the affairs or business of his employer. American Motorists Ins. Co. v. Steel, Tex.Civ.App., 229 S.W.2d 386.

One of the general purposes of workmen's compensation legislation is to transfer from the worker to the industry in which he is employed, and ultimately to the consuming public, a greater proportion of the economic loss due to industrial accidents and injuries. 58 Am.Jur., Workmen's Compensation, Sec. 2. The general rule is "that workmen's compensation acts are to be liberally construed to effectuate their beneficial purpose". Mingus v. Wadley, 115 Tex. 551, 285 S.W. 1084, 1087.

In speaking of a similar contention on the part of an insurer, the Texas Supreme Court in Lumberman's Reciprocal Ass'n v. Behnken, 112 Tex. 103, 246 S.W. 72, 73, 28 A.L.R. 1402, said:

"An injury has to do with, and arises out of, the work or business of the employer, when it results from a risk or hazard which is necessarily or ordinarily or reasonably inherent in or

incident to the conduct of such work or business. As tersely put by the Supreme Court of Iowa:

" 'What the law intends is to protect the employee against the risk or hazard taken in order to perform the master's task.'—Pace v. Appanoose County, 184 Iowa, 498, 168 N.W. 918.

"Though injuries arising from risks incidental to employment most frequently occur during hours of active labor and on premises within the control of the employer, yet they are not always so circumscribed either as to time or place. International & G. N. Ry. Co. v. Ryan, 82 Tex. [565] 571, 18 S.W. 219; Houston E. & W. T. Ry. Co. v. McHale, 47 Tex.Civ.App. 360, 105 S.W. [1149] 1151; Latter's Case, 238 Mass. 326, 130 N.E. [637] 638. Our statute declares that it is not necessary to fix liability that the injury be sustained on the employer's premises."

We are cited to three cases under the Texas Act in which an employee attempting to start an automobile to return home after work was held to be acting in the course of his employment and his injury sustained during such an attempt to be compensable. Petroleum Casualty Company v. Green, Tex.Civ.App., 11 S.W.2d 388; Federal Surety Company v. Ragle, Tex.Com.App., 40 S.W.2d 63; Winder v. Consolidated Underwriters, 5 Cir., 107 F.2d 973. The appellant properly points out that in each of these cases the injury was sustained on the premises owned or controlled by the employer. So far as we have found, no previous case has arisen under the Texas Act where the employee's attempt to start an automobile after finishing work began on the premises of his employer and continued on to the public highway where his injury occurred.

 Necessarily, therefore, we revert to the terms of the Texas Act specifying when an injury is sustained in the course of employment and inquire, (1) did Konvicka's injury originate in the work, and

(2) did it occur at a time when he was engaged in or about the furtherance of the affairs or business of his employer?

Konvicka began standing on the bumper of the pushing car while it was on the employer's premises and when the difficulty in getting the bumpers to meet was caused by the roughness of and holes in the employer's parking lot. Certainly the injury originated in the work just as clearly as did the injury in each of the three cases last cited.

As to the second query, it must be conceded that under the holding in each of those cases, certainly up to the time the boundary of the employer's premises was passed, Konvicka was engaged in or about the furtherance of the affairs or business of his employer. It seems unreasonable to say that he ceased to be so engaged the instant the boundary line of the employer's premises was crossed.

The appellant strenuously argues that subject to certain specific exceptions, the Texas Courts have uniformly held that injuries resulting from accidents sustained on a public highway while going to or returning from work are not compensable and that as applied to workers whose primary duties are performed on their employer's premises the Texas Courts have recognized but four exceptions to this well established so-called "going and coming rule", viz.:

1. Cases where the employer furnished transportation, or its equivalent.

2. Cases where the employee had been given a special mission on the particular day, such as delivering a message or merchandise on his way home.

3. Cases where the injury occurred on the employer's premises, or premises within his control.

4. Cases where the injury occurred when the employee, though not on the employer's premises, was in an area or on a route adjacent to the premises. The rule of these cases has sometimes been referred to as the "ingress and egress rule".[1]

---

1. The appellant cites in support of this position the following cases: Gombert

v. London Guarantee & Accident Co., 5 Cir., 1938, 100 F.2d 352; Clark v. Com-

While we appreciate the force of the appellant's argument, it seems to us that, at the time of the accident, Konvicka was engaged in a task preliminary to his homeward journey. While his destination was from his work to his home, his immediate and primary purpose in standing on the bumper of the pushing car was to get the vehicle started in which he proposed to make the trip home. It is as true here as in the Green case supra [11 S.W.2d 391], that "* * * until it started his only means of transportation from the premises and to his home were unavailable. Such transportation was * * * a necessary incident to the service he was rendering his employer, and, under the facts shown, the means employed must have been necessarily known to the employer and to have been passively approved and consented to by it."

At the time of Konvicka's injury the direction in which the automobile was being pushed was mainly incidental to getting its engine started. If the grade or terrain or other circumstance had made it more desirable in order to get its engine started for the car to be pushed in a direction other than or opposite to Konvicka's home, that course probably would have been pursued. The immediate and primary purpose at the time was to get the automobile started, after which, it would serve as a vehicle of Konvicka's transportation home. It seems to us that under a reasonable construction of the Texas Act and under the circumstances of this case, Konvicka had not gone beyond acts of preparation

for the trip he intended to make to his home, and that at the time of the accident the so-called "going and coming rule" had not become operative.

 In cases on or near the border line, the act should "be construed liberally and with common sense, to give effect to its purpose, the protection of employees, while in and about their work." Winder v. Consolidated Underwriters, 5 Cir., 107 F.2d 973, 975.

Judgment affirmed.

mercial Casualty Ins. Co., 5 Cir., 1938, 95 F.2d 58; Jasper v. Texas Employers Ins. Ass'n, Tex.Civ.App., 1947, 206 S. W.2d 646, no writ; Texas Employers Ins. Ass'n v. Grammar, Tex.Civ.App., 1941, 157 S.W.2d 701, rehearing denied, 1942—Ref. want Merit; Republic Underwriters v. Terrell, Tex.Civ.App., 1939, 126 S.W.2d 752, no writ; Smith v. Texas Employers' Ins. Ass'n, 1937, 129 Tex. 573, 105 S.W.2d 192; Viney v. Casualty Reciprocal Exchange, Tex.Civ.App., 1935, 82 S.W.2d 1088, refused; London Guarantee & Accident Co., Ltd. v. Thetford, Tex.Com.App., 1927, 292 S.W. 857; Aetna Life Ins. Co. v. Palmer, Tex.Civ.App., 1926, 286 S.W. 283, refused; Central Surety & Ins. Corp. v. Howard, 5 Cir., 1931, 47 F.2d 1049; Texas Employers' Ins. Ass'n v. Beach, Tex.Civ.App., 1948, 213 S.W.2d 60, Ref. N. R. E.; Bozant v. Federal Underwriters Exchange, Tex. Civ.App., 1942, 159 S.W.2d 973, Ref. Want Merit; Insurors Indemity & Ins. Co. v. Lankford, Tex.Civ.App., 1941, 150 S.W.2d 288, no writ; United States Fidelity & Guaranty Co. v. Flanagan, 1940, 134 Tex. 374, 136 S.W.2d 210, Royalty Indemnity Co. v. Madrigal, Tex. Civ.App., 1929, 14 S.W.2d 106, no writ; American Indemnity Co. v. Dinkins, Tex. Civ.App., 1919, 211 S.W. 949, Refused. Compare the decision of this court in New York Casualty Co. v. Wetherell, 5 Cir., 1952, 193 F.2d 881.