## ASSOCIATED INDEMNITY CORP. v. BUSH.

### No. 13978.

United States Court of Appeals
Fifth Circuit.

Feb. 13, 1953.

Rehearing Denied March 31, 1953.

See also, 100 F.Supp. 794.

Lee Sellers and Allan D. Montgomery, Wichita Falls, Tex., Nelson, Montgomery, Robertson & Sellers, Wichita Falls, Tex., for appellant.

Joe H. Cleveland, Bowie, Tex., Kearby Peery, Wichita Falls, Tex., Peery, Kouri & Wilson, Wichita Falls, Tex., for appellee.

Before HOLMES, RUSSELL and STRUM, Circuit Judges.

STRUM, Circuit Judge.

This action arises under the Texas Workmen's Compensation Law, Art. 8306 et seq., Vernon's Texas Civil Statutes. The question is whether or not appellee's husband, Porter Bush, was acting within the course of his employment within the meaning of Art. 8309 of the Texas statute on September 16, 1950, when he received fatal injuries in an automobile collision.

The deceased was an experienced oil field driller, in charge of a crew of three other men, who were employed with others to drill a well in a rural location about 33 miles from Bowie, where decedent and his crew members lived. The employer furnished no transportation to or from the job. Decedent and his three crew members, each of whom owned automobiles, had an agreement, to which the employer was not a party, by which one of them would transport the entire crew to and from the job every fourth day. They received no pay for going and coming time, nor any reimbursement for furnishing their own transportation, but were paid only for the time actually on the job, which was from 11:00 p. m. to 7:00 a. m.

There was no drinking water at the job site. The weather was warm, and decedent and his crew worked an eight hour shift, so it was essential that drinking water be brought to the job. It was the custom of the crew to bring their own water each night, for which purpose the employer had furnished them a container called a "Gott" can. The employer also purchased and paid for ice tickets which were left at an ice house in Bowie where the crew picked up each night, on the way to work, enough ice to cool the drinking water. This custom was known to and acquiesced in by the employer.

Upon the night in question it was deceased's turn to pick up the ice and transport the crew to the job site. Just before leaving home for that purpose, shortly after 9:00 p. m., he filled the can with drinking water, placed it in the trunk of his car, and started driving toward the ice house, which was on the direct route from decedent's home to the job site, from whence he intended to proceed to an agreed point to pick up the crew and thence proceed to the job, where they were due at 11:00 p. m. On the way to the ice house, the deceased received fatal injuries in a collision with another car. There is no specific evidence that the water can the decedent placed in his car on the night in question is the same can furnished by the employer, but there is evidence from which it could be reasonably inferred that it was.

The trial court denied appellant's motion for an instructed verdict based upon the ground that the employee, when injured, was not in the course of his employment. That issue was submitted to the jury upon a charge, to which appellant excepted, which in effect told the jury that there should be a verdict for plaintiff if they found that the decedent sustained an accidental injury while carrying drinking water in a can provided for that purpose by his employer, on the most direct route to the well site, and if they further found that it was necessary to have drinking water at the well site in order to more effectively carry on the work of his employer, and that the carrying of drinking water was incidental to his employment and authorized either expressly or impliedly by his employer. The trial court denied a charge to the contrary requested by the defendant. The jury found for the plaintiff below and the insurance carrier appeals.

The facts shown by this evidence present a jury question, and we find no reversible error in the charge upon which it was submitted to the jury. In Texas it is held that an accidental injury resulting from the hazards of the public streets is compensable if the employee at the time of the injury is actually engaged in the performance of a duty required by his contract of employment, or is engaged upon some mission incidental to his employment, of substantial benefit to, and with the express or implied approval of, his employer.

Liberty Mutual Ins. Co. v. Nelson, 142 Tex. 370, 178 S.W.2d 514; Federal Underwriters Exchange v. Lehers, 132 Tex. 140, 120 S. W.2d 791. In the case first above mentioned, Nelson was employed as a steel painter. He left his place of employment without any order from his employer and went to Houston, Texas, 40 miles away, to purchase supplies for his employer to be used by Nelson in painting. He used his own car, and was not paid for his time or expenses while making the trip. He was paid only for the time he was actually on the job, painting. Though he had no express orders to make this trip, the employer knew of and acquiesced in the employee's custom of making such trips. He was killed in a traffic accident on a public street in Houston, while engaged upon this mission. In holding this employee covered by the Act, the Supreme Court of Texas stated [142 Tex. 370, 178 S.W.2d 515]: "After a careful consideration of the above facts we are unable to say, as a matter of law, that Mr. Nelson [the employee] was not acting in the course of his employment with Peterson Brothers at the time he received his fatal injuries. It is true that he was not engaged in painting at the time, but he was on a mission pertaining to his employers' business, in furtherance thereof and for their benefit. Also, he was engaged in performing services for his employers which he was in the habit of performing with their knowledge, and which were fully approved by them. * * *." The court further held that the fact that the employee was not paid for his time while performing the mission was not conclusive. See also Mitchell v. Fidelity & Casualty Co., D.C., 43 F.Supp. 900, affirmed 5 Cir., 134 F.2d 537; Employers Mutual Liability Insurance Co. of Wisconsin v. Konvicka, 5 Cir., 197 F.2d 691; Texas Employers Insurance Ass'n v. Chitwood, Tex.Civ.App., 199 S.W.2d 806. Cf. Commercial Casualty Insurance Co. v. Strawn, Tex.Civ.App., 44 S.W.2d 805; Continental Casualty Co. v. Canales, Tex.Civ.App., 100 S.W.2d 797; Texas Employers Insurance Ass'n v. Monroe, Tex.Civ.App., 216 S.W.2d 659, 662; Southern Surety Co. v. Shook, Tex.Civ. App., 44 S.W.2d 425, 427.

The foregoing cases fully sustain the action of the trial court in denying the motion for a directed verdict and demonstrate the correctness of the charge under which the case was submitted to the jury. The Texas Workmen's Compensation Law is construed liberally and with common sense to effectuate its purpose, which is to compensate employees, or their surviving dependents, for injuries having to do with and originating in the employer's business, and received by the employee while engaged in or about the furtherance of the affairs or business of the employer, whether upon the employer's premises or elsewhere. In the Shook case, supra, the Texas Court of Civil Appeals said: "When a man is employed to work at any job, the fact that he is a human, with ordinary human habits and requirements, is necessarily taken into consideration."

Texas Employers Insurance Ass'n v. Beach, Tex.Civ.App., 213 S.W.2d 60, relied upon by appellant, is a typical "going and coming" case, in which the authorities are uniform that there is no coverage in the absence of circumstances which bring the travel within the contract of employment. Jasper v. Texas Employers Insurance Ass'n, Tex.Civ.App., 206 S.W.2d 646; American Motorist Insurance Co. v. Steel, Tex.Civ.App., 229 S.W.2d 386, 388; Smith v. Texas Employers' Insurance Ass'n, 129 Tex. 573, 105 S.W.2d 192, 194. In the Beach case, the deceased employee had left his employment at 3:30 p. m., and had proceeded in his own car about 50 miles to Breckenridge, Texas, where he and his crew remained for about two hours having supper and otherwise attending to their personal business. They left Breckenridge about 6:45 p. m. to proceed to their homes in Graham, Texas, and Beach was killed when his automobile overturned about 7:00 p. m. It is clear that his employment for the day terminated 3½ hours before his injury; that he had spent the intervening time engaged in his own personal pursuits; and that when injured he was engaged in no mission which concerned, or was of any benefit to, his employer, even though he had in his car a water can which had been used

to supply drinking water at the well site where he had been working earlier in the day. The facts of the Beach case clearly distinguish it from the case at bar.

Affirmed.