FEDERAL UNDERWRITERS EXCHANGE v. AUGUST LEHERS ET UX.

No. 6921. Decided November 9, 1938.
Rehearing overruled January 4, 1939.
(120 S. W., 2d Series, 791.)

*Battaile & Burr,* of Houston, for plaintiff in error.

*Wm. O. Bowers, Jr.,* of Beaumont, for defendants in error.

MR. JUDGE GERMAN delivered the opinion of the Commission of Appeals, Section A.

This is a suit under the Compensation Laws. Plaintiff in error, Federal Underwriters Exchange, was the insurance carrier. Harold Lehers, deceased, was the employee, and Double Dip Ice Cream Company was the employer. The mother and father of the deceased are the compensation claimants. The question for decision is this: Were the facts concerning the injury to the employee resulting in his death sufficient to raise an issue of fact that such injury was sustained while in the course of his employment within the meaning of the Workmen's Compensation Law? In the trial court the case was withdrawn from the jury and judgment was rendered in favor of plaintiff in error. The Court of Civil Appeals reversed and remanded the case. 79 S. W. (2d) 925.

The material facts as stated by the Court of Civil Appeals are as follows:

"The Double Dip Ice Cream Company had two sales stations in Beaumont, one on Calder Avenue and one on College Street, under the general management of Mr. F. R. Ball at the Calder Avenue station. Harold Lehers was employed to dip ice cream and to perform many other duties, principally at the Calder Avenue station. For some fourteen days prior to his death, the said Harold Lehers, under the direction of the manager, Mr. Ball, had been going from his home on Park Street to the College Street station, there obtaining the daily report and money of that station, and carrying the same to Mr. Ball at the Calder Avenue station, and there worked from 11 o'clock A. M. until 1 o'clock P. M., and again from 6 o'clock P. M. until closing time. On the morning of September 27, 1933, the said Harold Lehers left home at his customary time about 10:30 o'clock driving the family automobile, which it was his custom to use, in the direction of the College Street station,

and shortly afterward was killed in a collision with another automobile at the corner of Victoria and Royal Streets, eleven blocks from his home and seven blocks from the College Street station, and about twenty-five blocks from the Calder Avenue station, according to the map of the City of Beaumont in evidence. * * *

"Mr. F. R. Ball testified that he was the Beaumont manager of the Double Dip Ice Cream Company, which operated two sales stations in Beaumont, No. 1 on Calder Avenue and No. 2 on College Street, and Harold Lehers was at all times under his direct control and authority as an employee under an oral contract of employment; that Harold's main duty was dipping ice cream but he had many and various duties, which were performed at the Calder Avenue store; that on two occasions Harold had worked at the College Street station when an employee did not appear for work there, and on two occasions Harold had carried ice cream in his (Harold's) car from Calder Avenue store to the College Street store as he went home to dinner; that at his request Harold had for fourteen days prior to the fatal accident come by the College Street station each morning and brought that station's money to him at the Calder Avenue station, and reported for work at 11 o'clock, but that was a personal favor and.not a part of Harold's work, although it was the company's money, and no compensation was paid in addition to that paid for work at the Calder Avenue station from 11 o'clock A. M. to 1 o'clock P. M. and from 6 o'clock P. M. until closing time; that it was more convenient for him to have the money at 11 o'clock, as he usually went to the bank about 11:15 or 11:30 in the morning; that prior to Harold going by the College Street station for the reports and money, another employee named McLean, who lived within a block and a half of the College Street station and also worked at the Calder Avenue station, brought the reports and money to him, but that when he changed the boys' working hours, McLean's to one o'clock, he had Harold bring them to him at 11 o'clock; that he gave Harold these instructions in a rear room at the Calder Avenue store, yet he called him at home one time and told him to come by and get the money, knowing that Harold had the use of an automobile in going to and from work, and that by reason of the locations of his home and the two stations it would not be inconvenient to come by the College Street station on the way to the Calder Avenue station."

■ In the recent case of Smith v. Texas Employers' Insurance Association, 129 Texas 573, 105 S. W. (2d) 192, the Court

recognized the exception to the general rule concerning "street risks." According to this exception, the contract of employment may expressly or by implication provide that the work performed may subject the employee to risks and hazards of the streets, and if, while engaged in the performance of some particular duty of his employment, the employee is injured as results of hazards of the streets, his injury is compensable. In that case it was said:

"It appears to be the settled rule that even though the contract of employment contemplates that the employee, while engaged generally in the performance of his duties, may be subjected to the perils and hazards of the streets and highways, nevertheless in order that an injury resulting from the risks of the streets may be compensable, the employee, at the time of the injury, *must be actually engaged in the performance of some particular duty of his employment, or must be upon some substantial mission of his employer in the course of his employment, which subjects him to such perils*. This was true in the case of Consolidated Underwriters v. Breedlove, 114 Texas 172, 265 S. W. 128."

In the present case we think the evidence clearly raised an issue of fact as to whether or not the employee, at the time of the accident which resulted in his death, came within the exception. It cannot be said as a matter of law that he did not.

The judgment of the Court of Civil Appeals remanding the case for a trial is affirmed.

Opinion adopted by the Supreme Court, November 9, 1938.

Rehearing overruled January 4, 1939.