LIBERTY MUTUAL INSURANCE COMPANY V. HANNA BRONSTAD NELSON.

No. 8194. Decided February 23, 1944.
Rehearing overruled March 29, 1944.
(178 S. W., 2d Series, 514.)

*Kemper, Hicks & Cramer* and *John R. Cramer,* all of Houston, for petitioner.

Plaintiff was not entitled to recover in this suit because the injury for which recovery is sought was not sustained in the course of his employment, as that term is used in the Texas Compensation statutes. Bozant v. Federal Underwriters Exchange, 159 S. W. (2d) 973; Smith v. Texas Emp. Ins. Assn., 105 S. W. (2d) 192; Texas Ind. Ins. Co. v. Clark, 125 Texas 96, 81 S. W. (2d) 67.

*Baker, Botts, Andrews & Wharton, Albert P. Jones, Fred V. Hughes* and *Denman Moody,* all of Houston, for respondent.

There was ample evidence to sustain the proposition that plaintiff's husband was killed while in the course of his employment, as the trip to Houston upon which he was engaged at the time of the accident was reasonably undertaken to further the business of his employer. Maryland Casualty Co. v. Kent, 271 S. W. 929; Royal Ind. Co. v. Hogan, 4 S. W. (2d) 93; Heaton v. Globe Ind. Co., 71 S. W. (2d) 328.

MR JUSTICE CRITZ delivered the opinion of the Court.

This is a wormen's compensation suit. Alfred G. Nelson, now deceased, was the employee; Peterson Brothers, a partnership, were the employers; and Liberty Mutual Insurance Company was the compensation insurance carrier. Alfred G. Nelson received injuries on October 16, 1940, which resulted in his death shortly thereafter. Mrs. Nelson, his surviving widow, made claim for compensation before the Industrial Accident Board. The claim was rejected by the Board on a finding that Mr. Nelson was not acting in the course of his employment at the time he received his fatal injuries. Mrs. Nelson then filed this suit in the District Court of Harris County against the Insurance Company. Trial in the district court, with the aid of a jury, resulted in a verdict and judgment for Mrs. Nelson for $6,659.59.

This judgment was affirmed by the Galveston Court of Civil Appeals. 174 S. W. (2d) 103. The Insurance Company brings error.

In response to a proper issue submitted by the trial court, the jury found that Mr. Nelson sustained the injuries which resulted in his death while acting in the course of his employment as an employee of Peterson Brothers. Based on this finding, and a further finding in favor of a lump sum settlement, the trial court entered the judgment above indicated.

The Insurance Company contended in the two lower courts, and here contends, that there is no evidence in this record which will support a fact finding that Mr. Nelson was acting in the course of his employment at the time he received his fatal injuries on October 16, 1940.

We have read, and carefully considered, the entire statement of facts bearing on the question above indicated, and in our opinion such statement justifies the following facts conclusions: That Alfred G. Nelson died as the result of the injuries received by him in an automobile collision between the car which he owned, in which he was riding and which he was operating, and another car, driven and operated by a person not connected with this suit; that at the time of such accident Mr. Nelson was an employee of Peterson Brothers; that Peterson Brothers were engaged in the business of steel construction; that Mr. Nelson was employed by Peterson Brothers as a steel painter, and had been so employed for a number of years; that Mr. Nelson only received pay measured by the hour when he was actually at work on the job where he was working as a painter; that Mr. Nelson was painter foreman for his employers, and when other painters were employed he had control and supervision over them; that when Mr. Nelson needed help he usually notified his employers, and they either procured same or authorized him to do so; that when Mr. Nelson needed brushes or other supplies he usually notified his employers, and they furnished the same; that at times when Mr. Nelson needed help or supplies he procured the same himself, without consulting his employers; that such procedure was not demanded of Mr. Nelson by his employers, but it was satisfactory with them, and had been acquiesced in many times during Mr. Nelson's years of employment; that in hiring help and in purchasing supplies Mr. Nelson usually used his own car, at his own expense, and on his own time; that such procedure was not demanded of Mr. Nelson by his employers, but was known to them, and they did not object thereto; that when

Mr. Nelson purchased supplies he did so at the Pittsburgh Plate Glass Company, in Houston, Texas, and had such purchases charged to his employers' account; that such procedure was satisfactory with Mr. Nelson employers, and they always paid for the supplies he purchased; that on the occasion of his injuries, which resulted in his death, Mr. Nelson was on a trip from Texas City, Texas, where he was working as a steel painter for his employers, to Houston, Texas, some 40 or 50 miles distant, to purchase paint and paint brushes from the Pittsburgh Plate Glass Company in Houston, Texas; that such supplies were to be purchased for Peterson Brothers and charged to their account; that such supplies were proper and necessary for the prosecution of the work Mr. Nelson was doing for his employers at Texas City; that such work could not proceed without such supplies; that Mr. Nelson could have procured such paint and brushes by notifying his employers, but it was satisfactory with them for him to go and get them; and that Mr. Nelson was killed on a public street in Houston while on his way to Pittsburgh Plate Glass Company to purchase paint and brushes for his employers, to be used on the Texas City job where he was working.

After a careful consideration of the above facts we are unable to say, as a matter of law, that Mr. Nelson was not acting in the course of his employment with Peterson Brothers at the time he received his fatal injuries. It is true that he was not engaged in painting at the time, but he was on a mission pertaining to his employers' business, in furtherance thereof and for their benefit. Also, he was engaged in performing services for his employers which he was in the habit of performing with their knowledge, and which were fully approved by them. Counsel for the Insurance Company lays great stress on the fact that Mr. Nelson was paid nothing for his time or automobile when doing services such as this for his employers. It is true that Mr. Nelson received compensation by the hour only when he was at work on his employers' premises, but we do not regard this as conclusive in this instance. If Mr. Nelson needed paint or brushes in order to further his work, it might have been to his interest and to the interest of his employers for him to make this trip. Certainly through years of transactions Mr. Nelson's employers had approved his actions in using his car to make trips for them. In the face of such a record this Court cannot say, as a matter of law, that the evidence in this case fails to show that Mr. Nelson was acting within the scope of his employment when he went on this trip to procure supplies for his employers, in order that he himself might continue to prosecute his work for them as a painter. The evidence as a whole will justify the con-

clusion that the matter of making such trips as this was left to Mr. Nelson's discretion. We cite the following cases, which we think directly and indirectly support our holdings above: Lumbermen's Reciprocal Assn. v. Behnken, 112 Texas 103, 246 S. W. 72, 28 A. L. R. 1402; Federal Surety Co. v. Ragle (Com. App.), 40 S. W. (2d) 63; Federal Underwriters Exchange v. Lehers, 132 Texas 140, 120 S. W. (2d) 791; Texas Employers' Ins. Assn. v. Anderson (Civ. App.), 125 S. W. (2d) 674 (writ refused); Gallaher v. United States Fidelity & Guaranty Co. (Civ. App.), 77 S. W. (2d) 312 (writ dismissed); Liberty Mutual Ins. Co. v. Boggs (Civ. App.), 66 S. W. (2d) 787 (writ dismissed).

In our opinion the rule of law laid down in Lumbermen's Reciprocal Assn. v. Behnken, supra, fully authorizes recovery of compensation in this case. We quote as follows from such opinion:

"The Workmen's Compensation Law provides for compensation for the death of an employee from 'an injury sustained in the course of his employment,' and declares that 'all other injuries of every kind and character,' except certain enumerated injuries from causes or under conditions quite different from any attending the injury to Behnken, shall be included within the term 'injury sustained in the course of employment,' when 'having to do with and originating in the work, business, trade or profession of the employer, received by an employee while engaged in or about the furtherance of the affairs or business of the employer whether upon the employer's premises or elsewhere.' Article 5246-5, 5246-52, Vernon's Sayles' Texas Civil Statutes, 1918 Supplement.

 &ast;  &ast;  &ast; &ast;&ast;  &ast;  &ast;  &ast;

"An injury has to do with, and arises out of, the work or business of the employer, when it results from a risk or hazard which is necessarily or ordinarily or reasonably inherent in or incident to the conduct of such work or business. As tersely put by the Supreme Court of Iowa: 'What the law intends is to protect the employee against the risk or hazard taken in order to perform the master's task.' Pace v. Appanoose County, 184 Iowa, 498, 168 N. W., 918.

"Though injuries arising from risks incidental to employment most frequently occur during hours of active labor and on premises within the control of the employer, yet they are not always so circumscribed either as to time or place. International & G. N. Ry. Co. v. Ryan, 82 Texas, 571, 18 S. W., 219; Houston E. &

W. T. Ry. Co. v. McHale, 47 Texas Civ. App., 360, 105 S. W., 1151; Latter's Case, 238 Mass. 326, 130 N. E. 638. Our statute declares that it is not necessary to fix liability that the injury be sustained on the employee's premises."

Counsel for the Insurance Company contend that this record shows that Mr. Nelson was making the trip from Texas City to Houston primarily to look at a house and to visit his home, and that he merely intended to purchase paint and brushes while on such trip. We cannot say that the evidence in this record shows such to be a fact, as a matter of law. It is true that Mr. Nelson lived in Houston, where he and his wife kept house in a rented home, but the wife testified that Mr. Nelson only came home on week ends, and that she knew nothing of any intention to move. Mr. Nelson did state to the witness Reynolds something about a house, and said he was going to look it over Saturday or Sunday, but nothing was said about going to Houston for that purpose. To the contrary, he said he was going to Houston to get paint and brushes; and this trip was made on Wednesday, not on a week end.

It appears that Mr. Nelson's purpose in going to Houston was proved by statements made by him to the witness C. G. Reynolds just before he started on the trip. The Court of Civil Appeals held that such evidence was admissible under the res gestae rule. We think such holding is correct and is supported by the authorities cited in the opinion of the Court of Civil Appeals, to which we here refer.

The judgments of the Court of Civil Appeals and district court are both affirmed.

Opinion delivered February 23, 1944.

Rehearing overruled March 29, 1944.