**HARTFORD ACCIDENT & INDEMNITY CO. v. BOND et al.**

No. 2558.

Court of Civil Appeals of Texas. Eastland.

Nov. 22, 1946.

Rehearing Denied Jan. 10, 1947.

Turner & Seaberry, of Eastland, for appellant.

Scarborough, Yates & Scarborough, of Abilene, for appellees.

## GRISSOM, Chief Justice.

Norma Bond et al., the surviving wife and children of A. C. Bond, deceased, sued Hartford Accident and Indemnity Company to recover death benefits under the Workman's Compensation Statute for the death of their husband and father, A. C. Bond. H. R. Burden was Bond's employer, and Hartford Accident and Indemnity Company was his compensation carrier. Upon a jury verdict the court rendered judgment for plaintiffs, and the defendant has appealed.

Bond was employed as a roustabout by W. L. Bradshaw who was the driller on Burden's oil lease in Coleman County, about fifty miles from Merkel. Bond lived three miles west of Merkel. Bradshaw, Bond's immediate superior and boss, lived one half mile south of the railroad tracks in Merkel. There was evidence that Bond left his home about 5:00 P. M. on November 1, 1944; that as he left he stated to his wife, Norma Bond, that he was going to tell Bradshaw that he could not work that night because he was sick and didn't feel like working; that Bond's immediate superior, Bradshaw, who had the right to hire and fire him, had instructed Bond to let him know in advance any time he could not go to work and that Bond had agreed to do so; that it was the custom in the oil well drilling business for a member of a drilling crew to report to his superior in advance if he was not going to work the next tower; that it was important in the drilling of a well to have a full crew; that about one hour after Bond left home he was dead; that he was killed by the collision of his car, which he was driving on a public street in Merkel, with the automobile of another person who was in no manner connected with Bond's employer; and that the place where Bond was fatally injured was on a direct route between Bond's and Bradshaw's homes.

The jury found, among other things, (2) that Bond sustained his injuries while acting in the course of his employment and that (4) Bradshaw had instructed Bond to notify him in advance if he could not work the following tower.

Appellant's principal contention is that there was no evidence, or, in the alternative, insufficient evidence, to support the jury finding that Bond was acting within the scope of his employment at the time he was killed. Appellant earnestly contends that under the undisputed evidence, Bond was not within the course of his employment when killed because he was employed to work as a roustabout in drilling an oil well fifty miles from the place he was killed; that he had certain duties to perform for his employer on the lease; that he was employed to work on a regular shift from midnight to 8:00 A.M.; was paid by the hour only for work performed on the lease during said hours; that he had no duties to perform off the lease; that he was not furnished transportation between his home and the lease; and that he was killed between 6:30 and 7:00 P.M. while off duty, by a collision of his own car with that of a stranger on a public street in Merkel, a hazard to which the public was subject. Appellant further contends that Bond's trip to Bradshaw to notify said driller that Bond, the roustabout, would not work the next tower was not in the performance of such a special duty or mission for his employer as to make Bond's trip for said purpose an act within the scope of his employment to assist in the drilling of an oil well fifty miles away. Appellant also contends that if it be assumed Bond had a special mission to perform by notifying Bradshaw that he would not work the following tower, that said special mission had been completed when Bond was killed, as he had already notified the driller that he would not work and was returning from the driller's home to his own when killed and further that Bond was "fired" while at Bradshaw's home and the employment then ended.

After a painstaking study of the record, we have concluded that the evidence is suffi-

cient to support the finding that Bond was acting within the course of his employment when he was killed.

█ If, as plaintiffs' evidence indicates, Bond had been instructed by the driller to notify him in advance when he could not work the following tower so that the driller might have opportunity before beginning the next tower to obtain a substitute for Bond to the end that the work of drilling the well might be efficiently continued, and if Bond was killed while returning to the point from which he left to perform such special mission, and he had not deviated therefrom and gone off on a mission of his own, we think he was killed while acting within the scope of his employment within the meaning of the Workman's Compensation Law.

█ Under the decisions, we do not think the fact that Bond was killed fifty miles from the lease where he was employed to assist in drilling a well; that he was not killed during the regular hours for which he was employed to work as a roustabout; that he was paid by the hour only for work done on the lease between midnight and 8:00 A.M.; that ordinarily Bond had no duties to perform off the lease; that he was killed between 6:30 and 7:00 P.M. (his hours of employment being between midnight and 8:00 A.M.) by a collision between his own car and that of a stranger on a public street in Merkel either or all show conclusively, that is, as a matter of law, that Bond was not acting within the scope of his employment when he was killed.

In Liberty Mutual Insurance Company v. Nelson, 142 Tex. 370, 178 S.W.2d 514, our Supreme Court, under a similar fact situation, refused to hold as a matter of law that the employee was not killed while acting in the course of his employment. In said case the employee was employed as a steel painter. His employer was engaged in the business of steel construction. The employee, Nelson, was paid by the hour and only for the time that he was actually at work on the job where he was working as a painter. Nelson was a painter foreman and had control and supervision over other painters. When Nelson needed help he usually notified his employers, whereupon the employer either procured additional help or authorized Nelson to do so; when Nelson needed supplies he usually notified his employers and they furnished them; sometimes Nelson procured supplies without consulting his employers; the employers did not demand of Nelson that he procure supplies but had acquiesced in his doing so; in so doing Nelson usually used his own car at his own expense and on his own time; when he purchased supplies he did so from a company in Houston and the purchases were charged to the employers' account; this procedure was approved by the employers but Nelson was not required to do such things; when Nelson was killed he was driving from Texas City, where he was working as a steel painter, to Houston, forty or fifty miles away, to purchase supplies for his employer. The work he was employed to do in Texas City could not properly proceed without such supplies, but he could have procured them by notifying his employers. Nelson was killed on a public street in Houston while on his way to purchase supplies for his employers to be used on the job where he was working in Texas City. The Supreme Court said:

"We are unable to say, as a matter of law, that Mr. Nelson was not acting in the course of his employment * * * at the time he received his fatal injuries. It is true that he was not engaged in painting at the time, but he was on a mission pertaining to his employers' business, in furtherance thereof and for their benefit. Also, he was engaged in performing services for his employers * * * Counsel for the Insurance Company lays great stress on the fact that Mr. Nelson was paid nothing for his time or automobile when doing services such as this for his employers. It is true that Mr. Nelson received compensation by the hour only when he was at work on his employers' premises, but we do not regard this as conclusive * * *. If Mr. Nelson needed paint or brushes in order to further his work, it might have been to his interest and to the interest of his employers for him to make this trip. * * * this court cannot say, as a matter of law, that the evidence in this case fails to show that Mr. Nelson was acting within the scope of his employment when he went on this trip to

procure supplies for his employers, in order that he himself might continue to prosecute his work for them as a painter."

The Court quoted with approval from Lumberman's Reciprocal Ass'n v. Behnken, 112 Tex. 103, 246 S.W. 72, 73, 28 A.L.R. 1402, as follows:

"Though injuries arising from risks incidental to employment most frequently occur during hours of active labor and on premises within the control of the employer, yet they are not always so circumscribed either as to time or place. International & G. N. Ry. Co. v. Ryan, 82 Tex. [565,] 571, 18 S.W. 219; Houston, E. & W. T. Ry. Co. v. McHale, 47 Tex.Civ.App. 360, 105 S.W. [1149,] 1151; Latter's Case, 238 Mass. 326, 130 N.E. [637,] 638. Our statute declares that it is not necessary to fix liability that the injury be sustained on the employer's premises."

In Lehers v. Federal Underwriters' Exchange, Tex.Civ.App., 79 S.W.2d 925, affirmed 132 Tex. 140, 120 S.W.2d 791, an employee was held to be acting within the scope of his employment where his employer had two places of business and the employee regularly worked at one place, but, while driving his own automobile and going from his home to the other place, prior to regular working hours, to collect money from the other place to take to the manager at the place where he worked, as requested by the manager, notwithstanding the employee did not receive compensation for said trip, and he was injured off the employer's premises on a public street while driving his parents' automobile and not during regular working hours. See also Maryland Casualty Co. v. Stewart, Tex.Civ.App., 164 S.W.2d 800, (writ ref.), and Consolidated Underwriters v. Breedlove, 114 Tex. 172, 265 S.W. 128. In Texas Employers' Insurance Association v. Anderson, Tex.Civ. App., 125 S.W.2d 674 (writ ref.), the court held that it was not a prerequisite to recovery under the Workmen's Compensation Law that the employee be injured on the employer's premises, or during the hours of actual service, or that the employee then be engaged in the discharge of any specific duty incident to his employment. In Texas Employers' Insurance Association v. An-

drews, 130 Tex. 502, 110 S.W.2d 49, recovery was approved for the death of an employee caused by explosion of a steam boiler in a nearby building. The court held that it was not essential to recovery that the cause of the injury come from or originate in the work or business of the employer; that the cause of the injuries might be external and apart therefrom, if a casual relationship between employment and injury be shown. To comply with the instructions of his superior, who had the right to hire and fire him, Bond was required to use the streets of Merkel in going to and returning from the home of Bradshaw for the purpose of notifying Bradshaw that he could not work the following tower. See also Art. 8309, Sec. 1, Par. 4; Liberty Mutual Insurance Company v. Nelson, Tex.Civ.App., 174 S.W.2d 103, affirmed 142 Tex. 370, 178 S.W.2d 514; Globe Indemnity Co. v. Industrial Accident Commission, 36 Cal.App. 280, 171 P. 1088; Stockley v. School Dist., 231 Mich. 523, 204 N.W. 715, 718; Bookman v. Lyle Culvert & Road Equipment Co., 153 Minn. 479, 190 N.W. 984; Redner v. H. C. Faber & Son Co., 223 N.Y. 379, 119 N.E. 842; Kern v. Southport Mill, 174 La. 432, 141 So. 19; Morse v. Port Huron & D. R. Co., 251 Mich. 309, 232 N.W. 369; 51 A.L. R. 514; 71 C.J. pp. 675, 699, 711; American Mutual Liability Insurance Co. v. Parker, Tex.Sup. 191 S.W.2d 844; and Maryland Casualty Co. v. Long, Tex.Civ.App., 9 S.W. 2d 458, 460 (Writ Dis.).

We overrule appellant's contention that the judgment should be reversed because the court permitted Mrs. Bond to testify in substance that as Bond was leaving his home, about an hour before he was killed, he stated to her that he was going to tell his driller, Bradshaw, that he could not work that night because he was sick, and in permitting witnesses to testify that it was the general custom in the oil field for a member of a drilling crew to notify his driller if he was not going to work the next tower. Bond's statement to his wife was admissible as res gestae. Said statement, along with proof of custom, was admissible and pertinent on the issue whether Bond was acting in the course of his employment when killed. Liberty Mutual Insurance

Company v. Nelson, 142 Tex. 370, 375, 178 S.W.2d 514, affirming Tex.Civ.App., 174 S.W.2d 103, 105; Maryland Casualty Co. v. Kent, Tex.Civ.App., 271 S.W. 929, affirmed Tex.Com.App., 3 S.W.2d 414; Royal Indemnity Co. v. Hogan, Tex.Civ.App., 4 S.W.2d 93 (writ ref.); Maryland Casualty Co. v. Stevens, Tex.Civ.App., 55 S.W.2d 149, 152 (writ ref.); Texas Employers Insurance Association v. Shifflette, Tex.Civ.App., 91 S.W.2d 787, 790; and Heaton v. Globe Indemnity Co., Tex.Civ.App., 71 S.W.2d 328. Such testimony was objected to on the ground that it was not admissible under the provisions of Art. 3716. Said article is not applicable because Mrs. Bond was suing not as an heir but as a beneficiary under the Workmen's Compensation Statutes. Art. 8306, Sec. 8a; Floyd v. Fidelity Union Casualty Co., Tex.Civ.App., 13 S.W.2d 909; McDonald v. Texas Employers' Insurance Association, Tex.Civ.App., 267 S.W. 1074; Texas Employers' Insurance Association v. Herron, Tex.Civ.App., 29 S.W.2d 524; Texas Employers' Insurance Association v. Morgan, Tex.Civ.App., 289 S.W. 75, affirmed Tex.Com.App., 295 S.W. 588; Texas Employers Insurance Association v. Shifflette, Tex.Civ.App., 91 S.W.2d 787; Maryland Casualty Co. v. Stevens, Tex.Civ.App., 55 S.W.2d 149 (writ ref.).

 Appellant further contends that the undisputed evidence shows that Bond had been "fired" by Bradshaw prior to his injuries and that the relationship of employer and employee had terminated. We are of the opinion that the evidence of the driller to the effect that he had fired Bond, prior to the time Bond was killed, is so uncertain, vague, and contradictory that it cannot be considered as conclusive thereof. Furthermore, we are of the opinion that if Bond left his home on a special mission for his employer, that is, that he started from his home to that of the driller's to report to him, in accord with the driller's instructions,

that he would not be able to work on the next tower and, after having made such report, if he did, without departing from the purpose of said trip, was killed while returning to the point from which he started on such mission, while traveling on a direct route from the driller's home to his own, that it cannot be said, as a matter of law, even if he had been fired while at the driller's home, that his mission had been completed and, as a matter of law, that he was not then acting within the course of his employment. We understand the rule to be that if an employee is sent on a special mission, he is considered as still on such mission while returning from the place to which he was required by his employer to go, unless he deviates from the purpose of his mission and engages in an enterprise of his own. Here the jury had a right to conclude that Bond was at the place he was injured and subjected to the dangers of the street because of instructions of his superior to report to him when he could not work and that such report was for the benefit of his employer. Neither Bond nor Bradshaw had a telephone. They lived more than three miles apart. The instruction to report, under the circumstances, required Bond to drive his automobile to Bradshaw's home and to return over the streets of Merkel where he was killed. Safety Casualty Company v. Wright, 138 Tex. 492, 160 S.W.2d 238; 71 C.J. 711, 675; Proctor v. Hoage, 65 App.D.C. 153, 81 F.2d 555; Voehl v. Indemnity Insurance Company, 288 U.S. 162, 53 S.Ct. 380, 77 L.Ed. 676, 87 A.L.R. 245, 249; Maryland Casualty Co. v. Long, Tex.Civ.App., 9 S.W.2d 458, 460 (Writ Dis.); Consolidated Underwriters v. Breedlove, 114 Tex. 172, 265 S.W. 128.

We have considered all of the appellant's points not directly discussed. We think reversible error is not shown. All of appellant's points are overruled. The judgment is affirmed.