**Martha J. FREEMAN et al., Petitioners,**

**v.**

**TEXAS COMPENSATION INSURANCE COMPANY, Respondent.**

**No. B–8880.**

Supreme Court of Texas.

June 18, 1980.

Rehearing Denied July 23, 1980.

---

Law Offices of Norman & Bates, Roger M. Norman, Fort Worth, for petitioners.

Cantey, Hanger, Gooch, Munn & Collins, Estil A. Vance, Jr., Morgan, Gambill & Owen, Judge Gambill, Fort Worth, for respondent.

McGEE, Justice.

This is a suit to recover worker's compensation death benefits for the widow and minor children of Jimmy Bolding, a former employee of Southwestern Bell Telephone Company. Bolding was killed on September 14, 1974, when his car hit a concrete pillar adjacent to a freeway in Fort Worth. His widow, Martha Bolding, now Martha Freeman, sued the compensation insurance carrier, Texas Compensation Insurance Company (TCIC), claiming that her husband was killed in the course of his employment. Although a jury found that Bolding's death resulted from an injury received in the course of his employment, the trial court granted TCIC's motion for judgment non obstante veredicto. Freeman appealed, and the court of civil appeals reversed the trial court's judgment, holding that there was evidence to support the jury's verdict. The court of civil appeals also held that Bolding's beneficiaries were entitled to the maximum statutory death benefits of $70 per week until the widow remarried in 1975. The widow's share was $35 per week; the children received $35 per week. Upon remarriage, the widow was entitled to a lump sum payment equal to $35 weekly for two years and the children continued to receive $35 a week. 586 S.W.2d 172. We granted Freeman's application for writ of error to consider whether the court of civil appeals correctly determined the amount of benefits payable to Freeman and the children upon Freeman's remarriage.

Article 8306, section 8 of the Worker's Compensation Act deals with the amount and duration of death benefits payable to the legal beneficiaries of a deceased worker. Section 8(a) provides for weekly payments, with a specified minimum and maximum weekly amount:

"(a) If death results from the injury, the association shall pay the legal beneficiaries of the deceased employee a weekly payment equal to sixty-six and two-thirds per cent (66⅔%) of the employee's aver-

age weekly wage, but not less than the minimum weekly benefit nor more than the maximum weekly benefit set forth in Section 29 of this article."

Tex.Rev.Civ.Stat.Ann. art. 8306, § 8(a) (Vernon 1980). It was stipulated in this case that Bolding's wages entitled his beneficiaries to $70 per week upon his death if judgment were rendered in their favor. *See id.* § 29(b). TCIC and Bolding's widow, now Freeman, disagree, however, on the effect of Freeman's remarriage on TCIC's liability for death benefits. Freeman contends that the court of civil appeals incorrectly determined both the lump sum amount payable to her upon remarriage and the amount payable thereafter to her children. She urges that she is entitled to a lump sum payment equal to $70 per week for two years, and that the children should receive $70 weekly after her remarriage for as long as they are eligible.

█ Section 8(b) of article 8306 deals specifically with the effect of remarriage on the surviving spouse's benefits. The duration of that spouse's benefits is shortened to two years and the benefits are payable in a lump sum.

"(b) The weekly benefits payable to the widow or widower of a deceased employee shall be continued until the death or remarriage of the beneficiary. In the event of remarriage a lump sum payment equal in amount to the benefits due for a period of two (2) years shall be paid to the widow or widower. The weekly benefits payable to a child shall be continued until the child reaches eighteen (18) years of age, or beyond such age if actually dependent, or until twenty-five (25) years of age if enrolled as a full-time student in any accredited educational institution. All other legal beneficiaries are entitled to weekly benefits for a period of three hundred and sixty (360) weeks."

Tex.Rev.Civ.Stat.Ann. art. 8306, § 8(b) (Vernon 1980). Before her remarriage Freeman's share of death benefits was $35. Thus, in the language of section 8(b), the "benefits due" Freeman were $35 per week. This amount times the number of weeks in two years equals the correct lump sum payment. We disagree with Freeman's contention that $70 rather than $35 should be used to compute the lump sum. Allowing Freeman to recover a lump sum representing two years of $70 weekly payments, in addition to continuing benefits to the children would result in payments exceeding $70 per week, a result contrary to the language of section 8(a). We hold that upon remarriage, the surviving spouse is to receive a lump sum payment equal to the amount of benefits that spouse would have received if there were no remarriage.

As to the effect of Freeman's remarriage on the children's benefits, the parties agree that the children should continue to receive benefits but disagree on the amount. Freeman contends that the $35 portion of the weekly benefits previously paid to her should be redistributed to the children. TCIC argues that redistribution is not required and that its overall liability for weekly death benefits is partially discharged upon payment of the two years' lump sum to Freeman.

█ Although article 8306, section 8 provides for termination of payments to a surviving spouse upon remarriage, it does not expressly deal with the effect of remarriage on the overall liability of the carrier to remaining beneficiaries. The amount of weekly benefits initially required to be paid by the insurance carrier is controlled by section 8(a). Section 8(b) deals with various contingencies affecting the duration of time for which the surviving spouse, children, or other beneficiaries remain eligible. Section 8(b) does not limit the amount, as distinguished from the duration as to specific beneficiaries, of the carrier's liability for weekly payments. The weekly amount of compensation benefits is controlled solely by section 8(a). The eligibility of various beneficiaries may change, but the overall amount is unaffected. There is no language in the statute to indicate that the carrier's weekly liability, once established by section 8(a), is to be modified as long as there are eligible beneficiaries. It is therefore apparent that redistribution of benefits

rather than a partial discharge of liability was intended by the legislature. Redistribution is necessary to effect the requirement that the carrier "shall pay the legal beneficiaries" a weekly payment of a specified amount. In a case factually like this case, the Dallas Court of Civil Appeals has reached this result under similar reasoning. *See Blankenship v. Highlands Insurance Co.*, 594 S.W.2d 147 (Tex.Civ.App.—Dallas 1980, writ filed).

A legislative intent that weekly benefits be redistributed rather than partially discharged is expressed in section 8(c), which deals with ineligibility of a child. The benefits are redistributed among other children if eligible, or if there are no eligible children to the surviving spouse. TCIC argues that because the legislature provided for redistribution upon ineligibility of a child, but failed to provide for redistribution upon remarriage of a surviving spouse, the principle of *expressio unius est exclusio alterius* applies. According to TCIC, under this principle, a legislative intent that benefits are not to be redistributed after remarriage is indicated. We are unwilling to adopt this reasoning because of additional language in the statute that clearly indicates a legislative intent that upon ineligibility of any beneficiary, the share of benefits previously paid to that beneficiary must be redistributed to remaining eligible beneficiaries. As discussed above, section 8(a) fixes the amount of weekly benefits for which the carrier is liable upon the employee's death. Under the contingencies set out in paragraph (b), a beneficiary may become ineligible and a redistribution to remaining beneficiaries may be necessary to continue the benefits payable under section 8(a). Section 8(c) harmonizes with this intent. The legislature may have set out specific provisions for reallocation among children to eliminate doubt whether an ineligible child's share should be redistributed among remaining eligible children or among all eligible beneficiaries. Furthermore, application of the *expressio unius* principle would lead to an unreasonable result if the surviving spouse became ineligible by death rather than remarriage. Under the *expressio unius* principle, no redistribution to minor children would occur if the surviving spouse died; the minor children, now orphaned, would receive one-half of the original benefits. Yet, under section 8(c), a surviving spouse whose children became ineligible continues to receive full benefits. The *expressio unius* principle is a rule of logic and common sense and does not compel an unreasonable interpretation.

Our interpretation of section 8 is not inconsistent with section 8a of article 8306, which defines legal beneficiaries and requires payment of death benefits according to the laws of descent and distribution. Death benefits are "vested" in the sense that the status of a beneficiary as such is determined as of the date of the worker's death. *See* Tex.Rev.Civ.Stat.Ann. art. 8306, § 8a (Vernon 1980). The effect of subsequent ineligibility is governed by section 8. In this connection, our holding in this case is that redistribution occurs to the deceased worker's children, a class in whom the right to benefits was vested at the time the worker died.

Finally, we note that our interpretation of article 8306, section 8 is consistent with interpretations of worker's compensation statutes in other states. The following cases have held that upon remarriage, a surviving spouse's share of benefits is redistributed to minor beneficiaries. In some states, express provision is made for redistribution of benefits to the children upon remarriage of the surviving spouse. *See Kilby Steel Co. v. Robshaw*, 242 Ala. 351, 6 So.2d 427 (1942); *Yardley v. Montgomery*, 580 S.W.2d 263 (Mo.1979); *Stegner v. City of St. Paul*, 189 Minn. 290, 249 N.W. 189 (1933). Cases in other states have reached the same result in the absence of express statutory language. Although the statutory language differs in each state, the similarities are sufficient to make these cases persuasive. *See Georgia Forestry Commission v. Harrell*, 98 Ga.App. 238, 105 S.E.2d 461 (1958); *Cullen v. Pan Handle Coal Co.*, 81 Ind.App. 213, 141 N.E. 647 (1923); *Gillis v. New Orleans Public Service, Inc.*, 14 So.2d 112 (La.App.1943). *See generally* A.

Larson, the Law of Workmen's Compensation § 64.40 (1976). Cases cited by TCIC are distinguishable in that the liability for benefits was initially fixed according to the number of beneficiaries or an attempt was made to redistribute benefits to a relative in whom benefits were not vested when the worker died.

█ Although we hold that after Freeman's remarriage, her $35 share of weekly benefits is redistributed to the children, we do not agree with her contention that the children became entitled to $70 weekly immediately upon her remarriage. An immediate redistribution to the children, in addition to the lump sum representing two years of $35 weekly payments to Freeman, would result in payments exceeding $70 a week. Section 8(a) provides that the compensation carrier shall not be liable for more than the $70 maximum weekly benefit. In order to avoid exceeding this statutory limitation, the redistribution does not occur until two years after the remarriage.

### APPLICATION OF TCIC

█ At trial TCIC attempted to establish that Bolding's death was not sustained in the course of his employment for Southwestern Bell because he was going home or was on some other personal mission or that his death was a suicide. The jury having found that Bolding was in the course of employment, TCIC contends in its application for writ of error that the trial court correctly rendered judgment non obstante veredicto because there is no evidence to support the jury's finding. In deciding TCIC's "no evidence" point, we must view the evidence in the light most favorable to the verdict and consider only the evidence and inferences that support the verdict. TCIC's point of error must be sustained if there is a complete absence of, or no more than a scintilla of, evidence that Bolding was in the course of his employment at the time of the collision.

The following events preceding Bolding's death are not substantially disputed. At the time of his death, Bolding was a PBX installation foreman for Southwestern Bell, in charge of a crew of about six men. The collision occurred at about 2:05 p. m. on a Saturday, five minutes after Bolding had left an appointment in downtown Fort Worth. The purpose of his visit downtown was to take a polygraph test in connection with charges that he had attacked a woman in a parking lot about a month earlier. The victim had obtained the license number of the car driven by her assailant. The ownership of the car was traced to Bolding. In late August, Bolding was arrested and identified at a lineup. A Southwestern Bell security supervisor learned of the allegations against Bolding as a result of a call from the police. An interview of Bolding with some of his supervisors was scheduled for Friday, September 13. At the interview, Bolding admitted that he had been at the parking lot, but denied that he had approached anyone. After discussing the discrepancies between Bolding's story and the story of the victim, Bolding and his supervisors agreed that Bolding would take a polygraph test the following day. An appointment was arranged by Southwestern Bell for the following day. The next morning Bolding went to take the polygraph test. He first denied the parking lot incident, but later admitted it except for allegations that he had used a knife. The collision occurred about five minutes after Bolding left the examination at a location about six miles away.

The Worker's Compensation Act provides compensation only for injuries "sustained in the course of employment." Section 1 of article 8309 of the Act provides:

"The term 'injury sustained in the course of employment,' as used in this Act, shall not include:

"(1) An injury caused by an act of God, unless the employee is at the time engaged in the performance of duties that subject him to a greater hazard from an act of God responsible for the injury than ordinarily applies to the general public.

"(2) An injury caused by an act of a third person intended to injure the employee because of reasons personal to him and not directed against him as an employee, or because of his employment.

"(3) An injury received while in a state of intoxication.

"(4) An injury caused by the employee's wilful intention and attempt to injure himself, or to unlawfully injure some other person, but shall include all other injuries of every kind and character having to do with and originating in the work, business, trade or profession of the employer received by an employee while engaged in or about the furtherance of the affairs or business of his employer whether upon the employer's premises or elsewhere."

Tex.Rev.Civ.Stat.Ann. art. 8309, § 1 (Vernon 1966).

█ Article 8309, section 1b of the Act provides that injuries sustained while traveling are not in the course of employment unless the transportation is furnished as a part of the contract of employment or is paid for by the employer, or unless the means of the transportation are under the control of the employer, or unless the employee is directed in his employment to proceed from one place to another. *Id.* § 1b. Although four exceptions to the general rule of noncompensability for travel injuries are given, section 1b does not enlarge the definition of "course of employment" given in section 1; its purpose is to "circumscribe the probative effect that might be given to the means of transportation or the purpose of the journey." *Texas General Indemnity Co. v. Bottom,* 365 S.W.2d 350, 353 (Tex.1963). It is clear from the evidence in this case that none of the first three exceptions are applicable. Among the situations comprehended by the fourth exception, applicable when the employee is directed from one place to another, are situations in which the employee performs a "special mission" at the express or implied request of his employer. *See Texas Employers Insurance Association v. Knipe,* 150 Tex. 313, 239 S.W.2d 1006 (Tex.1951); *Liberty Mutual Insurance Co. v. Nelson,* 142 Tex. 370, 178 S.W.2d 514 (Tex.1944); *Federal Underwriters Exchange v. Lehers,* 132 Tex. 140, 120 S.W.2d 791 (Tex.1938); *Consolidated Underwriters v. Breedlove,* 114 Tex. 172, 265 S.W. 128 (Tex.1924). *See*

*generally* A. Larson, The Law of Workmen's Compensation § 16.10 (1978).

█ After a careful review of the evidence, we hold that there is evidence to support the verdict. The jury may have reasonably inferred that Bolding was directed by Southwestern Bell to take the polygraph test, and that an obligation to take the test was imposed upon Bolding as a condition of his employment. A Southwestern Bell security supervisor testified that the truth of the allegations against Bolding was a matter that Southwestern Bell, as Bolding's employer, would want to know about because of its responsibility to the public. An interview of Bolding with several of his supervisors was arranged by a Bell employee. The security supervisor testified that at the interview, "[w]e pointed out to Mr. Bolding that we were aware of the allegations that had been made against him and the fact that his car and his license number and that he had been picked from a lineup, yet he had denied being at the scene, and explained to him, with the facts that we had at hand; could he understand why there was a question in our mind as to what the real story was and why we had to resolve it." According to the same witness Bolding agreed that he sympathized with the company's position and was willing to clear the matter up. The witness further testified, "We discussed that perhaps a polygraph examination would be the cleanest, neatest, surest way to get to the bottom of things. . . ." The security supervisor suggested the examiner who conducted the test and set up the appointment for the next day. The supervisor met with Bolding at the polygraph examiner's office before the appointment and participated in discussions throughout the examination. The examination was paid for by Southwestern Bell and the results were given to Bell. This evidence, tending to show that Bolding was directed by his employer to take the test, brings this case within the exception to article 8309, section 1b allowing recovery for injuries sustained when the employee has been directed by his employer to proceed from one place to another.

TCIC has brought forward two points of error complaining of the exclusion of evidence by the trial court. At trial TCIC offered testimony from four witnesses relating to conversations with Bolding about suicide. Three of these witnesses were co-workers of Bolding when Bolding worked for Southwestern Bell in Wichita Falls. TCIC contends that Bolding's statements are evidence of "suicidal tendencies." The trial court excluded the testimony on the ground that it was too remote. On bill of exceptions, the witnesses did not testify as to the dates of the alleged conversations. Other evidence shows that Bolding moved from Wichita Falls to Fort Worth in 1973, and this fact indicates that the conversations must have occurred at least a year before Bolding's death. After the alleged conversations, Bolding moved to Fort Worth and was promoted in his job. In the absence of some showing that Bolding's attitudes, as reflected by his statements to the three co-workers, continued to exist at the time of his death, we hold that the trial court did not abuse its discretion in excluding the testimony.

For similar reasons we overrule TCIC's complaint about the exclusion of testimony of a Fort Worth co-employee who had a conversation with Bolding in which Bolding mentioned that he had previously attempted suicide and discussed one attempt. This evidence was also excluded by the trial court on the ground of remoteness. On bill of exceptions, the witness stated that Bolding had not indicated when the suicide attempt had occurred and that it could have occurred as many as ten years before Bolding's death. The trial court did not abuse its discretion in excluding this testimony.

Another evidentiary point raised by TCIC complains of the admission of testimony offered by Freeman to establish that Bolding was on his way to a worksite at the time of the collision. We agree with the court of civil appeals' holding that because there was other evidence sufficient to support the jury verdict we need not consider whether the admission of this testimony was error because error, if any, would be harmless.

For the reasons discussed above, TCIC's points of error are overruled. We render judgment that Freeman and her minor children recover death benefits under the Worker's Compensation Act. The judgment of the court of civil appeals awarding death benefits is affirmed but modified with respect to the amount payable after Freeman's remarriage. The judgment of the trial court is reversed and the cause remanded for entry of judgment to conform with the computation of benefits in accordance with this opinion.